

**FILED & ENTERED**

**OCT 25 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** gooch    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MICHELE S. WEISS,<br><br><br><br><br>Debtor(s). | CASE NO.: 6:17-bk-17718-WJ<br><br>CHAPTER: 13<br><br>**ORDER CONFIRMING CHAPTER 13 PLAN**<br><br>DATE:         October 25, 2017<br>TIME:          1:30 p.m.<br>COURTROOM: 304<br>PLACE:        United States Bankruptcy Court<br>                    Central District of California<br>                    3420 Twelfth Street<br>                    Riverside, CA  92501 |

On October 25, 2017 at 1:30 p.m., the Court held a confirmation hearing regarding the chapter 13 plan filed in this bankruptcy case on September 14, 2017 [docket #2] ("Plan").

Prior to the hearing, the debtor(s) in this case (hereinafter, "Debtors") appeared at a meeting of creditors conducted pursuant to 11 U.S.C. § 341(a) and were examined.

The Court finds that the Plan meets the requirements of 11 U.S.C. § 1325 and, accordingly,

IT IS ORDERED AS FOLLOWS:

1. The Plan is hereby confirmed as follows. The amount of each monthly payment by the Debtors to the Trustee:

   Starting October 14, 2017, the monthly plan payment is $344.
   Starting November 14, 2017, the monthly plan payment is $1,097.

   The due date for each payment is the 14th day of each month and the duration of the Plan is 60 months. General unsecured claims shall be paid 35% of their allowed claims.

2. Confirmation of the Plan is without prejudice to the rights of secured creditors with respect to post-petition defaults by the Debtors.

3. Other provisions:

   a. This is a base plan with the Debtors paying at least $65,067 of disposable income into the Plan. The Debtors shall submit statements of income on an annual basis to the Trustee, which income shall be reviewed by the Trustee who may petition the court to increase the monthly plan payment for cause until such time as all allowed unsecured creditors, to the extent they are to be paid during the term of the Plan, are paid 100%. The Trustee may increase the dividend paid allowed claims until the full amount of the Plan base stated in this paragraph has been paid by the Debtors or the claims have been paid in full without further notice or order from the court.

   b. The Trustee is authorized to make payment to holders of secured claims based on the Plan. However, a filed claim will control the amount owed the creditor, unless an objection is filed, whether that amount is more or less than the amount provided by the Plan.

   c. Counsel for Debtors is awarded fees of $3,000; having previously received $500, counsel is entitled to payment of $2,500 from the estate at a rate no more than $74 per month commencing forthwith. Using available funds, the trustee shall make this monthly payment to counsel provided that sufficient funds exist after paying all secured obligations (including, but not limited to, conduit and non-conduit secured obligations) and any other senior priority unsecured claims (such as trustee's fees).

   d. Debtors must pay the base plan amount or the percentage to unsecured creditors, whichever is greater.

   e. In addition to the monthly plan payments, tax refunds received during the term of the Plan are pledged to the Plan. Debtors shall timely file all tax returns.

   f. The Plan is modified to comply with the requirements of the court's approved plan form.

   g. Debtors reserve the right to object to any claim notwithstanding any Plan interlineations.

   h. Interlineations:

      1. Debtors shall provide the Trustee with the correct payment address and account number for all conduit payments being made by the Trustee within seven days of Plan confirmation.

      2. Per the liquidation analysis, Debtors must pay at least $1,900 to the unsecured creditors.

       3.       Net incentive income is pledged to the Plan.

4.       Additional provisions:

       a.       If the Plan includes addendum F 3015-1.1.ADDENDUM or any similar addendum, that addendum is hereby disapproved.  The F 3015-1.1.ADDENDUM is no longer an approved form in this district.  The form was unanimously withdrawn as an approved form by the judges of this district on June 1, 2012.

       b.       Any and all provisions in the Plan purporting to extinguish or modify any lien are hereby disapproved.  Pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, encumbrances and liens may only be modified pursuant to an adversary proceeding or, in limited circumstances, by motion.  Confirmation of the Plan shall not constitute an avoidance, extinguishment or modification of any lien or encumbrance.

       c.       Any provisions in the Plan purporting to create an automatic stay are hereby disapproved.  The automatic stay is governed by 11 U.S.C. § 362 and neither the Plan nor this order shall be construed to expand its provisions.  If, for example, the automatic stay has already terminated by operation of law (or never existed in this case in the first instance by operation of law), neither the Plan nor this order nor confirmation of the Plan will create an automatic stay.

       d.       Any and all provisions in the Plan purporting to immediately discharge any debts are hereby disapproved.  Debts may only be discharged by further court order.

       e.       Pursuant to sections 1328(a)(2) and 523(a)(3), a claim or debt shall not be discharged if the creditor holding the claim or debt did not receive proper and timely notice of the case and the terms of the Plan.  The provisions of the Plan and this order are not binding on any creditor or other party who was not properly and timely served with the Plan and the court mandated notice of the date, time and location of the meeting of creditors and confirmation hearing (i.e. F 3015-1.02.NOTICE.341.CNFRM).

       f.       In the event of any differences between the terms of the Plan and this Order, the terms of this Order shall control.  This Order supersedes and modifies any contrary or inconsistent terms of the Plan.

       g.       The Court previously entered a chapter 13 procedures order in this case [docket #10] ("Procedures Order").  The Procedures Order shall continue to apply in this case.  Debtors and counsel should review the Procedures Order again and, in particular, the provisions governing post-confirmation matters.

5.       Direct Payments and Related Matters

       a.       As discussed on the record, this case does not involve any direct payments by the Debtors to any creditors except to the following limited extent:

       With respect to the residence of the Debtors, the Trustee shall commence making the monthly mortgage payments for the senior mortgage in November of 2017 in the approximate amount of $321.36 per month to the creditor Seterus Inc.  The Trustee shall also commence paying the monthly homeowners association dues for the same property in November of 2017 in the approximate amount of $350 per month to the creditor PS Villas HOA.  Until that time, the Debtors shall timely make the post-petition payments directly to both creditors.  Other than those few payments by the Debtors prior to November of 2017, this case does not involve any other direct payments by the Debtors to creditors and, therefore, the Debtors need only file reports pursuant to paragraph 5(e) for the period of time during which they are responsible for making Direct Payments.

       b.       As used in this order, the term "Direct Payments" means (i) all payments described in the preceding paragraph 5(a) of this order which the Debtors are responsible for paying directly to creditors at any time during this case

and (ii) any other payments to be made by or on behalf of the Debtors directly to any creditor during the term of the Plan. Direct Payments are required obligations under the terms of the confirmed Plan for all purposes and, therefore, (among other things) constitute required "payments under the plan" within the meaning of 11 U.S.C. § 1328(a). As discussed in paragraph 5(e) below, Debtors must provide proof that all Direct Payments are paid during the case.

       c.      With Court permission, the Bankruptcy Code often permits debtors to sell, abandon or refinance property of the estate during a chapter 13 case or obtain other financing on a secured or unsecured basis. However, court permission in advance is required to do so. Therefore, if the Debtors seek to sell, transfer, give away, abandon or refinance property (including, but not limited to, collateral for the obligations which are paid by Direct Payments) or obtain any other financing, the Debtors must file an appropriate motion to obtain a court order prior to selling, abandoning, transferring, giving away or refinancing property or obtaining other financing. Likewise, if in preparing to sell, abandon or refinance property or otherwise transfer property or obtaining financing, the Debtors desire to discontinue, suspend or otherwise not timely pay the Direct Payments, the Debtors must file a motion to modify the Plan (to excuse the payments) prior to defaulting in making Direct Payments in order to modify the stream of payments due under the terms of the confirmed Plan and avoid a default under the Plan and section 1328(a).

       d.      The Debtors shall timely (1) pay to the Trustee all payments by each monthly due date, (2) pay all other obligations arising under the Plan or in the case including, but not limited to, Direct Payments and (3) comply with all provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, local bankruptcy rules, the Procedures Order and this order. Failure to do so may result (depending on the circumstances) in dismissal of the case with or without a bar to re-filing pursuant to 11 U.S.C. § 109(g)(1) (and other applicable law) or denial of discharge.

       e.      Yearly Reports. Once a year, the Debtors shall file and serve a cumulative report regarding Direct Payments. Between January 1st and 31st of each year, the Debtors shall file a cumulative report regarding all Direct Payments made during the case for the period from the petition date to the preceding December 31st. So, for example, between January 1, 2018 and January 31, 2018, the Debtors shall file a report regarding all Direct Payments required from the petition date to December 31, 2017. Then, between January 1, 2019 and January 31, 2019, the Debtors shall file a report regarding all Direct Payments required from the petition date to December 31, 2018. Thereafter, the Debtors shall continue to file such reports each January covering the entire post-petition period from the petition date to the December 31st preceding the January in which the report is filed until (a) entry of discharge, (b) conversion of this case to another chapter or (c) dismissal of this case. Each report shall include a declaration by the Debtors with a table stating whether and when the Debtors made all Direct Payments. The table in the declaration should include dates of each payment, amounts of each payment and the payee of each payment. Appropriate legible backup documentation should be attached to the declaration which demonstrates all payments were made. Each time the Debtors make Direct Payments they should retain copies of the checks or other instruments used to make the payments in order to attach such backup documentation to the annual declaration. The annual declaration shall be filed with the Court no later than January 31st each year and served on the Trustee by the same date.

      f.      If the Debtors later seek to convert this case to another chapter or to dismiss this case or to file a motion to modify the Plan in order to suspend, reduce or modify payments under the Plan (such as Direct Payments, payments to the Trustee or any other Plan obligations), the Court hereby sets a deadline for doing so.  The deadline for seeking to dismiss or convert this case or to file the motion to modify the Plan is twenty-eight days after the due date for the first monthly payment to the Trustee, Direct Payment, mortgage payment, lease obligation or other Plan obligation that the Debtors fail to pay timely.  In other words, the deadline to seek conversion or dismissal of this case or modification of the Plan is twenty-eight days after the first default under the terms of the Plan, the local rules or other applicable law.

IT IS SO ORDERED.

###

Date: October 25, 2017

                                                Wayne Johnson
                                                United States Bankruptcy Judge